Philip J. Furia (NJ Bar No. 013152009)
**FURIA LAW, LLC**
350 Springfield Avenue, Suite 200
Summit, New Jersey 07901
Tel: (646) 830-1915
Email: furiap@furiafirm.com

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENNIFER ZELENKA individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEGACY TREATMENT SERVICES and COMMUNITY TREATMENT SOLUTIONS,<br><br>Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jennifer Zelenka ("Plaintiff") on behalf of herself and all others similarly situated ("Class Members"), file this Class Action Complaint ("Complaint") against Defendants Legacy Treatment Services ("Legacy") and Community Treatment Solutions ("CTS") (collectively Legacy and CTS are "Defendants"), and complain and allege upon personal knowledge as to themselves and information and belief as to all other matters.

## INTRODUCTION

1. Plaintiff brings this class action against Defendants for their failure to safeguard and secure the personally identifiable information ("PII") and personal health information ("PHI"; collectively with PII, "Personal Information") of tens of thousands of individuals including Plaintiff and Class Members. The individuals affected are patients and employees of Defendants, whose Private Information was maintained by Defendants.[1]

2. The data reportedly exposed in the breach includes some of the most sensitive types of data that cybercriminals seek in order to commit fraud and identity theft. As a result of Defendants' negligence, between approximately October 6, 2024 and October 11, 2024, cybercriminals were able to gain access to this sensitive and valuable Personal Information (the "Data Breach").[2] According to Defendants, the Personal Information disclosed in the Data Breach includes, but is not limited to, "first and last names with one or more of the following identifiers: Social Security Number, Date Of Birth, Driver's License Number / State Id Number, Phone Number, Email Address, Passport Number, Financial Account Number, Routing Number, Bank Name, Credit / Debit Card Number, Card CVV Expiration Date, Pin/Security Code, Login Information, Medical Diagnosis, Clinical Information, Medical

---

[1] *See Notice of Data Security Incident*, https://www.legacytreatment.org/home/notice-of-data-security-incident/

[2] *See id.*

Treatment/Procedure Information, Treatment Type, Treatment Location, Treatment Cost Information, Doctor's Name, Medical Record Number, Patient Account Number, Health Insurance Information, Prescription Information and/ or Biometric Data."[3]

3. According to a notice letter posted by Defendants, upon learning of the Data Breach (the date of which is not specified), Defendants "quickly engaged professionals experienced in handling these types of incidents to assist us with an investigation and to assess the full scope of information impacted."[4] Defendants indicate that the investigation was completed on July 18, 2025 – nine months after the Data Breach.[5]

4. Despite learning of the Data Breach approximately several months beforehand, Defendants did not begin alerting Plaintiff and other victims of the Data Breach until approximately August 22, 2025.[6]

5. Armed with the Private Information accessed in the Data Breach, cybercriminals can commit a variety of crimes, including opening new financial information in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, and using Class Members' Private Information to target other phishing and hacking intrusions.

---

[3] *See id.*
[4] *See id.*
[5] *See id.*
[6] *See id.*

6. Defendants owed a non-delegable duty to Plaintiff and Class Members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their Private Information against unauthorized access and disclosure. Defendants breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect its patients' and employees' Private Information from unauthorized access and disclosure.

7. Had Defendants provided adequate data security to Plaintiff and Class Members, the Data Breach would have been prevent or at least, its effects would have been mitigated.

8. As a result of Defendants' inadequate security and breach of their duties and obligations, the Data Breach occurred, and Plaintiff's and Class Members' Private Information was accessed and disclosed. This action seeks to remedy these failings and the harm caused to Plaintiff and Class Members. Plaintiff bring this action on behalf of themselves and all persons whose Private Information was exposed as a result of the Data Breach.

9. As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of financial fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

10. Plaintiff and Class Members have suffered injuries as a result of Defendants' conduct. These injuries include: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time (that Plaintiff and Class Members could have dedicated to employment and recreation) and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) misuse of their Private Information; (vi) loss of benefit of the bargain; (vii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (viii) statutory damages; (ix) nominal damages; and (x) the continued, imminent, and heightened risk of irreparable damage as their Private Information (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information.

11. Plaintiff seeks remedies including, but not limited to, compensatory damages, treble damages, punitive damages, reimbursement of out-of-pocket costs, and injunctive relief, including improvements to Defendants' data security systems, future annual audits, and adequate credit monitoring services funded by Defendants.

12. Plaintiff, on behalf of herself and all other Class Members, asserts claims for negligence, negligence per se, breach of fiduciary duty, breach of implied

contract, and unjust enrichment. Plaintiff and Class Members seek declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

13. Plaintiff Jennifer Zelenka is an adult individual and citizen of the state of New Jersey who resides in Burlington County, where she intends to remain. In August 2025, Ms. Zelenka received a copy of the Notice Letter from Defendants, notifying her that her Private Information was among the information accessed by cybercriminals in the Data Breach.

14. Defendant Legacy Treatment Services is a healthcare provider with a principal place of business in Marlton, New Jersey.

15. Defendant Community Treatment Solutions is a healthcare provider with a principal place of business in Marlton, New Jersey.

## JURISDICTION AND VENUE

16. This This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act, because: (a) the proposed Class consists of 100 or more members; (b) at least one Class Member is a citizen of a state diverse from Defendant's citizenship; and (c) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

17. This Court has personal jurisdiction over Defendant because Defendant

is organized under the laws of the State of New Jersey and maintains its principal place of business in this District.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is located in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### *Overview of Defendants*

19. Defendant Legacy is a behavioral health and social service healthcare provider[7].

20. Defendant CTS is an organization designed "as an alternative to residential placement for children and youth" with "complex needs in the community setting.[8]"

21. Defendant CTS is owned, managed and operated by Legacy.

22. Plaintiff and Class Members are or were employees or patients of Defendants.

23. To obtain Defendants' services or employment by Defendants, Plaintiff and Class Members were required to and did provide Defendants with highly sensitive Private Information.

[7] https://www.legacytreatment.org/about-us/
[8] *Id*.

24. In the regular course of its business, Defendants collects, stores, and maintains the Private Information it receives from its patients and employees.

25. By creating and maintaining massive repositories of Private Information, Defendants has provided a particularly lucrative target for cybercriminals looking to obtain, misuse, or sell such data.

***The Data Breach and Notice Letter***

26. On or about August 22, 2025, Defendants sent Notice Letters to individuals affected by the Data Breach.[9].

27. The Notice Letters Defendants provided to victims of the Data Breach are glaringly deficient.

28. Defendants fail to indicate when they learned of the Data Breach, only saying that it conducted an investigation "[i]mmediately upon detecting this activity."[10]

29. Defendant also fails to explain what, exactly, happened beyond stating that "a cybersecurity incident . . . impacted connectivity to our network.[11]"

30. Defendants also fails to specify any details of the investigation or the identity of the "professionals" it hired. Notably, Defendants asserts that it has "no evidence that any personal information has been or will be misused for identity theft

[9] https://www.legacytreatment.org/home/notice-of-data-security-incident.
[10] *See id.*
[11] *See id.*

as a direct result of this incident" but fails to identify the steps it took to detect such indications. [12]

31. According to Defendants, the unauthorized actor may have accessed sensitive Personal Information including "first and last names with one or more of the following identifiers: Social Security Number, Date Of Birth, Driver's License Number / State Id Number, Phone Number, Email Address, Passport Number, Financial Account Number, Routing Number, Bank Name, Credit / Debit Card Number, Card CVV Expiration Date, Pin/Security Code, Login Information, Medical Diagnosis, Clinical Information, Medical Treatment/Procedure Information, Treatment Type, Treatment Location, Treatment Cost Information, Doctor's Name, Medical Record Number, Patient Account Number, Health Insurance Information, Prescription Information and/ or Biometric Data."[13]

32. According to the breach report Defendants submitted to the Maine Attorney General, the Data Breach affected approximately 41,826 individuals.[14]

33. Defendants began to notify affected individuals of the Data Breach on or about August 22, 2025.[15] This means that Defendants waited approximately ten months from the date of the Data Breach to directly notify affected individuals.

---

[12] *See id.*
[13] *See id.*
[14] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/c82f893a-b2f7-4c1f-b512-8273bbc51586.html
[15] https://www.legacytreatment.org/home/notice-of-data-security-incident.

34. To date, Defendants has not disclosed substantial crucial information, including, but not limited to, how the cybercriminals were able to exploit vulnerabilities in Defendants' IT security systems; the identity of the hacking group or individual responsible for the Data Breach; which law enforcement entities Defendants notified of the Data Breach; the exact information exposed in the Data Breach; the methodologies and full results of its investigation; when it learned of the Data Breach; why it waited approximately six months to notify affected individuals, or the specific measures, if any, Defendants have since taken to enhance its security safeguards.

35. Defendants' systems hacked by cybercriminals contained Plaintiff's and Class Members' Private Information that was accessible, unencrypted, unprotected, and vulnerable to acquisition and/or exfiltration by the unauthorized actor.

36. Plaintiff and Class Members provided their Private Information to Defendants, either directly or indirectly, with the reasonable expectation and mutual understanding that Defendants would comply with its obligation to keep such information confidential and secure from unauthorized access.

37. Defendants also benefited directly from the Private Information provided by Plaintiff and Class Members, as it collected this Personal Information for its business purposes and, thus, generated a profit from its utilization.

38. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendants assumed legal and equitable duties and knew, or should have known, that it was responsible for protecting Plaintiff's and Class Members' Personal Information from unauthorized disclosure.

***Defendants Knew That Criminals Target Private Information.***

39. At all relevant times, Defendants knew or should have known, Plaintiff's and all other Class Members' Private Information was a target for malicious actors. Despite such knowledge, Defendants failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class Members' Private Information from cyberattacks that Defendants should have anticipated and guarded against.

40. As a business entity covered by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") that collects, creates, and maintains significant volumes of Private Information, this attack was a foreseeable risk that Defendants was aware of and knew it had a duty to guard against.

41. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches preceding the date of the Data Breach, which has been widely reported in the last few years.

42. In the wake of the significant rise in data breaches, the Federal Trade Commission has also issued an abundance of guidance for companies and

institutions that maintain individuals' Private Information.[16]

43. As a result of the notoriety of cyberattacks on systems like Defendant's, several other government entities have also issued warnings to potential targets so that they may be alerted and prepared for a potential attack like the Data Breach.

44. The American Medical Association has also warned healthcare companies about the importance of protecting their patients' confidential information: "Cybersecurity is not just a technical issue; it's a patient safety issue . . . . 83% of physicians work in a practice that has experienced some kind of cyberattack."[17]

45. In light of the high-profile data breaches and a wealth of relevant guidance and news reports at Defendants' disposal, Defendants knew or should have known that their electronic records and stored Private Information of its employees/clients' employees would be targeted by cybercriminals.

46. These data breaches have been a consistent problem for the past several years, providing Defendants sufficient time and notice to improve the security of their systems and engage in stronger, more comprehensive cybersecurity practices.

47. Cybercriminals seek out PHI at a greater rate than other sources of

---

[16] *See, e.g., Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N., https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business

[17] Andis Robeznieks, *Cybersecurity: Randomware attacks shut down clinics, hospitals*, AM. MED. ASS'N. (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals

personal information. In a 2022 report, the healthcare compliance company, Protenus, found there were 905 medical data breaches in 2021, leaving over 50 million patient records exposed for 700 of the 2021 incidents. This is an increase from the 758 medical data breaches Protenus compiled in 2020.[18]

48. According to a mid-year report by Fortified Health Security, The healthcare sector suffered approximately 337 breaches in the first half of 2022 alone.[19] Nearly 80% of all reported incidents were attributed to malicious activity.[20]

49. Private Information is a valuable property right.[21] The value of Private Information as a commodity is measurable.[22] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[23] American companies are estimated to have spent over $19 billion on acquiring consumers' personal data in 2018.[24] In fact, it is so valuable to identity

---

[18] *2022 Breach Barometer*, PROTENUS, https://blog.protenus.com/key-takeaways-from-the-2022-breach-barometer

[19] Jill McKeon, *Health Sector Suffered 337 Healthcare Data Breaches in First Half of Year,* Cybersecurity News (July 19, 2022), *available at*: https://healthitsecurity.com/news/health-sector-suffered-337-healthcare-data-breaches-in-first-half-of-year.

[20] *Id.*

[21] *See* Marc van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFO. AND COMMC'N. TECH. 26 (May 2015), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . . .").

[22] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[23] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[24] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERT. BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

thieves that once Private Information has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

50. As a result of its real value and the recent large-scale data breaches, identity thieves and cybercriminals have openly posted credit card numbers, Social Security numbers, and other Private Information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated, becoming more valuable to thieves and more damaging to victims.

51. PHI is particularly valuable and has been referred to as a "treasure trove for criminals."[25] A cybercriminal who steals a person's PHI can end up with as many as "seven to ten personal identifying characteristics of an individual."[26] A study by Experian found that the "average total cost" of medical identity theft is "about 20,000" per incident and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[27]

52. All-inclusive health insurance dossiers containing sensitive health insurance information, names, addresses, telephone numbers, email addresses,

---

[25] *See* Andrew Steger, *What Happens to Stolen Healthcare Data?*, HEALTHTECH MAG. (Oct. 30, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black).
[26] *Id.*
[27] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010, 5:00 A.M.), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/.

Social Security numbers, and bank account information, complete with account and routing numbers, can fetch up to $,200 to $1,300 each on the black market.[28] According to a report released by the Federal Bureau of Investigation's Cyber Division, criminals can sell healthcare records for 50 times the price of a stolen Social Security or credit card number.[29]

53. Consumers place a high value on the privacy of their PII. Researchers shed light on how much consumers value their data privacy -- and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[30]

54. Given these factors, any company that transacts business with a consumer and then compromises the privacy of consumers' Private Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

55. Therefore, Defendants clearly knew or should have known of the risks of data breaches and thus should have ensured that adequate protections were in place, particularly given the nature of the Private Information stored in its

[28] SC Staff, *Health insurance credentials fetch higher prices in the online black market*, SC MAG. (Jul. 16, 2023), https://www.scmagazine.com/news/health-insurance-credentials-fetch-high-prices-in-the-online-black-market.
[29] *See Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain*, FBI CYBER DIVISION (Apr. 8, 2014), https://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf.
[30] Janice Y. Tsai, et al., *The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

unprotected files, the massive amount of Private Information it maintains, and its status as a HIPAA-covered entity.

***Theft of Private Information has Grave and Lasting Consequences for Victims.***

56. Data breaches are more than just technical violations of their victims' rights. By accessing a victim's personal information, the cybercriminal can ransack the victim's life: withdraw funds from bank accounts, get new credit cards or loans in the victim's name, lock the victim out of their financial or social media accounts, send out fraudulent communications masquerading as the victim, file false tax returns, destroy their credit rating, and more.[31]

57. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utility fraud, and bank/finance fraud.[32] In addition, identity thieves may obtain a job using the victim's Social Security Number, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[33]

---

[31] *See* Laura Pennington, *Recent Data Breach Trends Mean Your Info Was Likely Stolen Last Year*, TOP CLASS ACTIONS (Jan. 28, 2019), https://topclassactions.com/lawsuit-settlements/privacy/data-breach/875438-recent-data-breach/.

[32] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official state or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

[33] *See Warning Signs of Identity Theft*, FED. TRADE COMM'N, https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft

58. Indeed, Attorney Steven Weisman, the editor of Scamicide.com, says that hackers can easily use the last four digits of people's Social Security numbers, as was exposed in the Data Breach, to determine the first five digits themselves, since "they relate to where you live and where your card was issued."[34]

59. Identity theft victims are frequently required to spend many hours and large sums of money repairing the adverse impact on their credit.

60. As the United States Government Accountability Office noted in a June 2007 report on data breaches ("GAO Report"), identity thieves use identifying data such as Social Security Numbers to open financial accounts, receive government benefits, and incur charges and credit in a person's name.[35] As the GAO Report states, this type of identity theft is more harmful than any other because it often takes time for the victim to become aware of the theft, and the theft can impact the victim's credit rating adversely.

61. The GAO Report also states that victims of this type of identity theft will face "substantial costs and inconveniences repairing damage to their credit records" and their "good name."[36]

62. There may be a time lag between when PII is stolen and

[34] Alanna Flood & Amy Phillips, *Social Security numbers of some Xfinity customers vulnerable in latest data breach: What to know*, THE HILL (Dec. 30, 2023), https://thehill.com/homenews/4381585-social-security-numbers-of-some-xfinity-customers-vulnerable-in-latest-data-breach-what-to-know/.
[35] *See Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOV'T ACCOUNTABILITY OFF. (June 2007), https://www.gao.gov/new.items/d07737.pdf.
[36] *Id.* at 2, 9.

used.[37] According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[38]

63. Personal Information is such a crucial commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cybercriminals have openly posted stolen credit card numbers, Social Security Numbers, and other Private Information directly on various Internet websites, making the information publicly available.

64. Due to the highly sensitive nature of Social Security numbers, theft of Social Security numbers in combination with other PII (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quotes data security researcher Tom Stickley, whom companies employ to find flaws in their computer systems, stating, "If I have your name and your Social Security number and you haven't gotten a credit freeze yet, you're easy pickings."[39]

---

[37] For example, on average, it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information. John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9, 12 (2019), https://www.iiisci.org/Journal/PDV/sci/pdfs/IP069LL19.pdf.

[38] U.S. GOV'T ACCOUNTABILITY OFF., *supra* n.47 at 29 (emphasis added).

[39] Patrick Lucas Austin, *'It is Absurd.' Data Breaches Show It's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019, 3:39 P.M.), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

65. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft, and some need over a year.[40]

66. Theft of PII is even more serious when it includes theft of PHI. Data breaches involving medical information "typically leave[] a trail of falsified information in medical records that can plague victims' medical and financial lives for years."[41] It is "also more difficult to detect, taking almost twice as long as normal identity theft."[42]

67. In warning consumers of the dangers of medical identity theft, the Federal Trade Commission ("FTC") states that an identity thief may use Personal Information "to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care."[43] The FTC also warns, "If the thief's health information is mixed with yours, it could affect the medical care you're able to get or the health insurance benefits you're able to use. It could also hurt your credit."[44]

68. Plaintiff and Class Members must vigilantly monitor their financial and

---

[40] *2021 Consumer Aftermath Report: How Identity Crimes Impact Victims, Their Families, Friends and Workplaces*, IDENTITY THEFT RES. CTR., https://www.idthecenter.org/identity-theft-aftermath-study/

[41] Pam Dixon and John Emerson, *Report: The Geography of Medical Identity Theft*, WORLD PRIV. F. 6 (Dec. 12 2017), https://www.worldprivacyforum.org/2017/12/new-report-the-geography-of-medical-identity-theft/.

[42] *Health Care Systems and Medical Devices at Risk*, *supra* n.41.

[43] *What to Know About Medical Identity Theft*, FED. TRADE COMM'N CONSUMER INFO., https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft

[44] *Id.*

medical accounts and their family members' accounts for many years to come.

69. It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use that information for any number of improper purposes and scams, including making the information available for sale on the black market.

## PLAINTIFF'S EXPERIENCES

70. Plaintiff was an employee at Defendant CTS from 2013 until 2020.

71. In the course of her employment, Plaintiff's PHI and PII was collected and stored by Defendants.

72. Plaintiff received a letter from Defendant notifying her that she is a victim of the Data Breach and has suffered the unauthorized exposure of her PHI and PII.

73. Plaintiff values her privacy and makes every effort to keep her personal information private.

74. Since the Data Breach, Plaintiff has been the victim of identity theft.

75. Plaintiff has experienced a significant increase in the frequency of spam phone calls and messages from individuals who have obtained her private information.

76. Research on the internet reveals that Plaintiff's information has been

detected on the "dark web."

77. Plaintiff faces a substantial risk of being targeted in the future for phishing, data intrusion, and other illegal schemes based on her PHI and PII, as potential fraudsters will use exposed information to target Plaintiff more effectively.

78. As a result of the Data Breach, Plaintiff has had to spend over 15 hours of her time researching the Data Breach and monitoring her accounts to detect suspicious and fraudulent activity to mitigate against potential harm.

79. Plaintiff is now forced to live with the anxiety that her PHI and PII, including sensitive medical information, may be disclosed to the entire world, thereby subjecting Plaintiff to embarrassment and depriving him of any right to privacy whatsoever.

80. As a result of Defendants' conduct, Plaintiff has suffered actual ascertainable damages including, without limitation, time and expenses related to monitoring financial accounts for fraudulent activity, facing an increased and imminent risk of fraud and identity theft, a diminution in the value of her private and confidential personal information, the loss of the benefit of her contractual bargain with Defendants, out of pocket expenses, emotional distress, and other economic and non-economic harm.

81. Plaintiff remains at a substantial and imminent risk of future harm given the highly-sensitive nature of the information stolen. Plaintiff faces a substantial risk

of out-of-pocket fraud losses, such as loans opened in her name, medical services billed in her name, tax return fraud, utility bills opened in her name, credit card fraud, and similar identity theft.

82. Plaintiff will now be forced to expend additional time to freeze credit, to review credit reports and monitor financial accounts and medical records for fraud or identify theft – particularly since the compromised information may include Social Security numbers.

***Damages Sustained by Plaintiff and the Other Class Members***

83. Plaintiff and all other Class Members have suffered injury and damages, including, but not limited to (i) a substantially increased risk of identity theft and medical identity theft -- risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Personal Information; (iii) deprivation of the value of their Personal Information, for which there is a well-established national and international market; (iv) lost time (which Plaintiff could have devoted to work and recreation) and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft and medical identity theft they face and will continue to face; and (v) overpayment for the services that were received without adequate data security.

## CLASS ALLEGATIONS

84. This action is brought and may be properly maintained as a class action pursuant to Rule 23.

85. Plaintiff bring this action on behalf of themselves and all members of the following Class of similarly situated persons:

> All natural persons who are residents of the United States whose Personal Information was accessed in the 2023 Data Breach and/or 2024 Data Breach by unauthorized persons, including all persons who were sent a notice of the 2023 Data Breach and/or 2024 Data Breach.

86. Plaintiff reserve the right to amend the above definition or to propose other or additional classes in subsequent pleadings and/or motions for class certification.

87. Plaintiff are each a member of the Class.

88. Excluded from the Class are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Defendants their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or its related entities have a controlling interest, and its current or former officers and directors.

89. This action seeks both injunctive relief and damages.

90. Plaintiff and the Class satisfy the requirements for class certification for the following reasons:

91. **Numerosity of the Class.** The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable.

While the exact number of Class Members is unknown at this time, Class Members are readily identifiable in Defendants' records, which will be a subject of discovery. Upon information and belief, there are more than 15,000 Class Members.

92. **Common Questions of Law and Fact.** There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

a. Whether Defendants' data security systems prior to the Data Breaches met the requirements of relevant laws;
b. Whether Defendants' data security systems prior to the Data Breaches met industry standards;
c. Whether Defendants owed a duty to Plaintiff and Class Members to safeguard their Private Information;
d. Whether Defendants breached their duty to Plaintiff and Class Members to safeguard their Private Information;
e. Whether Defendants failed to provide timely and adequate notice of the Data Breaches to Plaintiff and Class Members;
f. Whether Plaintiff's and Class Members' Private Information was compromised in the Data Breach;
g. Whether Plaintiff and Class Members are entitled to injunctive relief; and
h. Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' conduct.

93. **Typicality.** The claims or defenses of each Plaintiff are typical of the claims or defenses of the proposed Class because Plaintiff's claims are based upon the same legal theories and same violations of law. Plaintiff and Class Members all had their Personal Information stolen in the Data Breach. Plaintiff's grievances, like the proposed Class Members' grievances, all arise out of the same business practices and course of conduct by Defendants.

94. **Adequacy of Representation.** Plaintiff will fairly and adequately represent the Class on whose behalf this action is prosecuted. Their interests do not conflict with the interests of the Class.

95. Plaintiff and their chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint. In particular, Plaintiff's Counsel has been appointed as lead counsel in several complex class actions across the country and has secured numerous favorable judgments in favor of its clients, including in cases involving data breaches. Plaintiff's Counsel is competent in the relevant areas of the law and has sufficient experience to vigorously represent the Class Members. Finally, Plaintiff's Counsel possesses the financial resources necessary to ensure that the litigation will not be hampered by a lack of financial capacity and is willing to absorb the costs of the litigation.

96. **Predominance.** The common issues identified above arising from Defendants' conduct predominate over any issues affecting only individual Class Members. The common issues hinge on Defendants' common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of themselves and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

97. **Superiority.** A class action is superior to any other available method for adjudicating this controversy. The proposed class action is the surest way to fairly and expeditiously compensate such a large number of injured persons, to keep the courts from becoming paralyzed by hundreds -- if not thousands -- of repetitive cases, and to reduce transaction costs so that the injured Class Members can obtain the most compensation possible.

98. Class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious and wasteful litigation for many reasons, including the following:

a. It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions. Many members of the Class are not in the position to incur the expense and hardship of retaining their own counsel to prosecute individual actions, which, in any event, might cause inconsistent results.

b. When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class. This will promote global relief and judicial efficiency in that the liability of Defendants to all Class Members, in terms of monetary damages due and in terms of equitable relief, can be determined in this single proceeding rather than in multiple individual proceedings where there will be a risk of inconsistent and varying results.

c. A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions. If Class Members are forced to bring individual suits, the transactional costs, including those incurred by Defendants, will increase dramatically, and the courts will be clogged with a multiplicity of lawsuits concerning the very same subject matter, with the identical fact patterns and the same legal issues. A class action will promote a global resolution and uniformity of relief to the Class Members and as to Defendants.

d. This lawsuit presents no difficulties that would impede its management

by the Court as a class action. The class certification issues can be easily determined because the Class includes only customers of Defendants, the legal and factual issues are narrow and easily defined, and the Class Membership is limited. The Class does not contain so many persons that would make the Class notice procedures unworkable or overly expensive. The identity of the Class Members can be identified from Defendants' records, such that direct notice to the Class Members would be appropriate.

99. **Injunctive relief.** Defendants has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive or equitable relief on a class-wide basis. Further, Plaintiff and Class Members have an interest in ensuring that their Personal Information, which is believed to remain in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online, is encrypted, and is password-protected. Damages from a future breach due to Defendants' inadequate data security represent an irreparable injury (such as the further loss of privacy and exposure of PII such as social security numbers) for which no adequate remedy at law exists.

100. Likewise, particular issues are appropriate for certification under Rule 4:32-2(d) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendants' data security systems prior to the Data Breach met the requirements of relevant laws;
b. Whether Defendants' data security systems prior to the Data Breach met industry standards;
c. Whether Defendants owed a duty to Plaintiff and Class Members to safeguard their Private Information;
d. Whether Defendants breached their duty to Plaintiff and Class Members to safeguard their Private Information;
e. Whether Defendants failed to provide timely and adequate notice of the Data Breach to Plaintiff and Class Members;
f. Whether Plaintiff's and Class Members' Private Information was compromised in the Data Breach;
g. Whether Plaintiff and Class Members are entitled to injunctive relief; and
h. Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' conduct.

## CAUSES OF ACTION

## COUNT I
## NEGLIGENCE
## (On Behalf of Plaintiff and All Class Members)

101. Plaintiff and Class Members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

102. As a condition of receiving Defendants' services, Plaintiff and Class Members were required to and did provide Defendants with their Private Information.

103. By collecting and storing their Private Information and using it for commercial gain, at all times relevant, Defendants owed a duty to Plaintiff and all other Class Members to exercise reasonable care in safeguarding and protecting their Private Information in its possession, custody, or control.

104. Defendants' duty of care also arose as a result of the special relationship existing between Defendants and their patients, which is recognized by laws and regulations, including federal and state statutes and common law.

105. Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with statutory and industry standards and to ensure that their systems and networks and the personnel responsible for them adequately protected the Private Information.

106. Defendants knew the risks of collecting and storing Plaintiff's and all other Class Members' Private Information and the importance of maintaining secure systems. Defendants knew of the many data breaches that targeted companies that store Private Information in recent years.

107. Given the nature of Defendants' business, the sensitivity and value of the Private Information it maintains, and the resources at its disposal, Defendants should have identified the vulnerabilities in their systems and prevented the Data Breaches from occurring.

108. Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Private

Information entrusted to them -- including Plaintiff's and Class Members' Private Information.

109. Plaintiff and Class Members are a well-defined, foreseeable, and probable group of customers that Defendants was aware, or should have been aware, could be injured by inadequate data security measures.

110. Plaintiff and Class Members have no ability to protect their Private Information that was or remains in Defendants' possession.

111. It was reasonably foreseeable to Defendants that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' Private Information to unauthorized individuals.

112. But for Defendants' negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

113. Defendants' conduct was grossly negligent and departed from reasonable standards of care, including, but not limited to, failing to adequately protect Plaintiff's and Class Members' Private Information and failing to provide

them with timely notice that their Private Information had been compromised.

114. Neither Plaintiff nor Class Members contributed to the Data Breaches and subsequent misuse of their Private Information as described in this Complaint.

115. By failing to provide timely and complete notification of the Data Breaches to Plaintiff and Class Members, Defendants prevented them from proactively securing their Personal Information and mitigating the associated threats.

116. As a result of Defendants' above-described wrongful actions, inaction, and lack of ordinary care that directly and proximately caused the Data Breaches, Plaintiff and all other Class Members have suffered and will continue to suffer economic damages and other injury and actual harm in the form of, inter alia, (i) a substantially increased risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Personal Information; (iii) breach of the confidentiality of their Personal Information; (iv) deprivation of the value of their Personal Information, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breaches, including the increased risks of medical identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

**COUNT II**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and All Class Members)**

117. Plaintiff and Class Members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

118. Defendants had duties by statute to ensure that all information collected and stored was secure and that it maintained adequate and commercially reasonable data security practices to ensure the protection of Plaintiff's and Class Members' Private Information.

119. Defendants' duties arise from, *inter alia*: Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1); the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), 45 C.F.R. Part 160 and 164, Subparts A and E, and the HIPAA Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C (collectively, "HIPAA"); and the Health Information Technology Act ("HITECH"), which operates in tandem with HIPAA. *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

120. Defendants is also subject to NJ Rev. Stat. § 26-2J-27, which requires that all medical facilities, such as those operated by Defendants, ensure that patients' medical records and communications are kept confidential.

121. The FTCA prohibits "unfair . . . practices in or affecting commerce,"

including, as interpreted by the FTC, the unfair act or practice by a business, such as Defendants, of failing to employ reasonable measures to protect and secure PII.

122. The FTC has published numerous guides for businesses that highlight the importance of implementing reasonable data security practices. In 2016, the FTC updated its publication establishing cybersecurity guidelines for businesses, which makes thorough recommendations, including, but not limited to, for businesses to protect the PII they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[45]

123. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect PII, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTCA. Orders resulting from these actions further clarify the measures businesses such as Defendants must take to meet their data security obligations and effectively put Defendants on notice of these standards.

124. As a business associate of health care organizations, Defendants is a covered entity under HIPAA. *See* C.F.R. § 160.102. HIPAA limits the permissible

[45] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N. (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

uses of PHI and prohibits unauthorized disclosure of PHI.

125. HIPAA establishes national standards for the protection of patient information, including PHI, which is defined as "individually identifiable health information" that either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

126. As a covered entity under HIPAA, Defendants is required under federal and state law to maintain the strictest confidentiality of their patients' Private Information that it acquires, receives, and collects, and Defendants is further required to maintain sufficient safeguards to protect that Private Information from being accessed by unauthorized third parties.

127. HIPAA specifically requires Defendants to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendants is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

128. HIPAA and HITECH further obligated Defendants to implement policies and procedures to prevent, detect, contain, and correct security violations

and to protect against uses or disclosures of electronically protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. § 17902.

129. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires HIPAA-covered entities and their business associates to provide notification following a breach of unsecured PHI to each affected individual "without unreasonable delay and in no case later than 60 days following the discovery of the breach."[46]

130. HIPAA defines a breach as ". . . the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." 45 C.F.R. § 164.40. The Data Breaches are considered a breach under HIPAA because there was an access of PHI not permitted under the HIPAA Privacy Rule. *See id.*

131. Defendants violated these enumerated statutes by, inter alia, failing to use reasonable measures to protect Plaintiff's and all Class Members' Personal Information, not complying with applicable industry standards, and delaying their notification to affected individuals. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information it obtains and

---

[46] *Breach Notification Rule*, U.S. DEP'T. OF HEALTH AND HUM. SERVS. OFF. FOR C.R., https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (last updated July 26, 2013).

stores and the foreseeable consequences of a data breach involving Private Information, including, specifically, the substantial damages that would result to Plaintiff and other Class Members.

132. Defendants' violations of the federal and state statutes constitute negligence *per se* for purposes of establishing the duty and breach elements of Plaintiff's negligence claim.

133. Plaintiff and Class Members are within the class of persons that these federal and state statutes were intended to protect.

134. Defendants owed a duty of care to the Plaintiff and the members of the Class because they were foreseeable and probable victims of any inadequate security practices.

135. The harm occurring as a result of the Data Breaches is the type of harm against which these federal and state statutes were intended to guard against.

136. It was reasonably foreseeable to Defendants that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class Members' Private Information to unauthorized individuals.

137. It was also reasonably foreseeable that Defendants' failure to use reasonable measures to protect Personal Information and provide timely notice of the Data Breaches would injure Plaintiff and other Class Members. Further, the breach of security, unauthorized access, and resulting injury to Plaintiff and the members of the Class were reasonably foreseeable.

138. It was therefore foreseeable that the failure to adequately safeguard Personal Information would result in one or more of the following injuries to Plaintiff and the members of the proposed Class: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the deep web black market; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

139. The injury and harm that Plaintiff and the other Class Members suffered was the direct and proximate result of Defendants' violations of these federal and state statutes. Plaintiff and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia:

(i) a substantially increased risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Personal Information; (iii) breach of the confidentiality of their Personal Information; (iv) deprivation of the value of their Personal Information, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breaches, including the increased risks of medical identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

## COUNT III
## BREACH OF FIDUCIARY DUTY
## (On Behalf of Plaintiff and All Class Members)

140. Plaintiff and Class Members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

141. Plaintiff and Class Members gave Defendants their Personal Information in confidence, believing that Defendants would protect that information. Plaintiff and Class Members would not have provided Defendants with this information had they known it would not be adequately protected. Defendants' acceptance and storage of Plaintiff's and Class Members' Private Information created a fiduciary relationship between Defendants and Plaintiff and Class Members.

142. In light of this relationship, Defendants has a fiduciary duty to act primarily for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship, which includes safeguarding and protecting Plaintiff's and Class Members' Private Information.

143. Defendants breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class Members' Personal Information and otherwise failing to safeguard Plaintiff's and Class Members' Private Information that they collected.

144. As a direct and proximate result of Defendants' breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer injury, including, but not limited to, (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) the improper compromise, publication, and theft of their Personal Information; (iii) deprivation of the value of their Personal Information, for which there is a well-established national and international market; (iv) lost time and money incurred, and future costs required, to mitigate and remediate the effects of the Data Breaches, including the increased risks of identity theft they face and will continue to face; (v) the continued risk to their Personal Information which remains in Defendants' possession; and (vi) overpayment for the services that were received without adequate data security.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and All Class Members)**

145. Plaintiff and Class Members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

146. In connection with receiving medical treatment, services, and/or participation in a health plan, Plaintiff and all other Class Members entered into implied contracts with Defendants.

147. When Plaintiff and Class Members paid money and provided their Personal Information to Defendants, either directly or indirectly, as a pre-condition and in exchange for medical services or treatments, they entered into implied contracts with Defendants.

148. Pursuant to these implied contracts, in exchange for the consideration and Personal Information provided by Plaintiff and Class Members, Defendants agreed to, among other things, and Plaintiff understood that Defendants would (i) provide products and/or services to Plaintiff and Class Members, (ii) implement reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' Private Information, and (iii) protect Plaintiff's and Class Members' Private Information in compliance with federal and state laws and regulations and industry standards.

149. The protection of Private Information was a material term of the

implied contracts between Plaintiff and Class Members, on the one hand, and Defendants, on the other hand. Indeed, as set forth *supra*, Defendants recognized its duty to provide adequate data security and ensure the privacy of its patients' Private Information with its practice of providing a privacy policy on its website.

150. Plaintiff and Class Members performed their obligations under the implied contract when they provided Defendants with their Private Information and paid for the services from Defendants.

151. Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

152. Had Plaintiff and Class Members known that Defendants would not adequately protect their customers' Private Information, they would not have received services from Defendants.

153. Defendants breached their obligations under its implied contracts with Plaintiff and Class Members in failing to implement and maintain reasonable security measures to protect and secure their Private Information and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class Members' Private Information in a manner that complies with applicable laws, regulations, and industry standards.

154. Defendants' breach of the obligations of its implied contracts with Plaintiff and Class Members directly resulted in the Data Breaches and the injuries

that Plaintiff and all other Class Members have suffered from the Data Breaches.

155. Plaintiff and all other Class Members suffered as a result of Defendants' breach of implied contracts because (i) they paid for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft -- risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; (vi) lost time and money incurred, and future costs required, to mitigate and remediate the effects of the Data Breaches, including the increased risks of identity theft they face and will continue to face; and (vii) overpayment for the services that were received without adequate data security.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

156. Plaintiff and Class Members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

157. This claim is pleaded in the alternative to the breach of implied contract claim.

158. Plaintiff and Class Members conferred a monetary benefit upon

Defendants in the form of (i) paying monies in exchange for Defendants' healthcare services or health insurance premiums and (ii) the provision of their valuable Personal Information. Indeed, upon acquiring the Personal Information, Defendants was able to, *inter alia*, utilize the Private Information to conduct its business and generate profit for itself.

159. Defendants accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. Defendants profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

160. Upon information and belief, Defendants, like most other business entities, funds their data security measures entirely from their general revenue, which includes money paid by Plaintiff and Class Members.

161. As such, a portion of the payments made by or on behalf of Plaintiff and Class Members is or should have been used to provide a reasonable level of data security.

162. Defendants enriched itself by saving the costs it reasonably should have expended on data security measures to secure its customers' Private Information.

163. Instead of providing a reasonable level of security that would have prevented the Data Breaches, Defendants calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing less expensive and less effective security measures.

164. As a direct and proximate result of Defendants' failure to provide the requisite security, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

165. Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendants failed to adequately implement the data privacy and security procedures for themselves that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

166. Defendants should be compelled to provide for the benefit of Plaintiff and Class Members all unlawful proceeds received by it as a result of its conduct and the resulting Data Breaches alleged herein.

## COUNT VI
## DECLARATORY JUDGMENT
## (On Behalf of Plaintiff and All Class Members)

167. Plaintiff and Class Members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

168. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the

parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

169. An actual controversy has arisen in the wake of the Defendants' Data Breaches regarding its present and prospective common law and other duties to reasonably safeguard its patients' Private Information and whether Defendants is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Personal Information.

170. Plaintiff allege that Defendants' data security measures remain inadequate. Plaintiff and Class Members will continue to suffer injury because of the compromise of their Personal Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

171. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendants continues to owe a legal duty to secure patients' and employees' Personal Information and to timely notify patients and employees of a data breach under the common law, HIPAA, Section 5 of the FTC Act, and various states' statutes; and

b. Defendants continues to breach this legal duty by failing

to employ reasonable measures to secure patients' Personal Information.

172. The Court also should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with law and industry standards to protect patients' Personal Information.

173. If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendants. The risk of another such breach is real, immediate, and substantial. If another breach at Defendants occurs, Plaintiff and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

174. The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Among other things, if another massive data breach occurs at Defendants, Plaintiff and Class Members will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendants has pre-existing legal obligations to employ such measures.

175. Issuance of the requested injunction will not do a disservice to the

public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendants, thus eliminating the additional injuries that would result to Plaintiffs, Class Members, and Defendants' patients and employees, whose Personal Information would be further compromised.

**COUNT VII**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J.S.A. § 56:8-1, *et seq.***
**(On Behalf of Plaintiff and All Class Members)**

176. The New Jersey Consumer Fraud Act (the "NJCFA"), N.J.S.A. § 56:8-1, *et seq*., prohibits the act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression or omission, in connection with the sale or advertisement of any merchandise. The NJCFA applies whether or not any person has in fact been misled, deceived or damaged thereby. N.J.S.A. § 56:8-2.

177. Plaintiffs, Defendants, and Class Members are "persons" within the meaning of N.J.S.A. § 56:8-1(d).

178. Defendants sells "merchandise," as defined by N.J.S.A. § 56:8-1, by offering population health technology services to the public.

179. Defendants, operating in New Jersey, engaged in unconscionable and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of

population health technology services in violation of N.J.S.A. § 56:8-2, including but not limited to the following:

a. Misrepresenting material facts, pertaining to the sale of population health technology services, to its patients, including the Plaintiff and Class Members, by representing that they would maintain adequate data security practices and procedures to safeguard Plaintiff's and Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

b. Misrepresenting material facts, pertaining to the sale of population health technology services, to its patients, including the Plaintiff and Class Members, by representing that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff's and Class Members' Personal Information;

c. Knowingly omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for Plaintiff's and Class Members' Personal Information with the intent that Plaintiff and Class Members rely on the omission, suppression, and concealment;

d. Engaging in unconscionable and deceptive acts and practices with respect to the sale of population health technology services by failing to maintain the privacy and security of Plaintiff's and Class Members' Personal Information in violation of duties imposed by and public policies reflected in the FTC Act;

e. Engaging in unconscionable and deceptive acts and practices by failing to disclose the Data Breaches to Plaintiff and Class Members in a timely and accurate manner in violation of N.J.S.A. § 56:8-163;

f. Representing on its website that it "is committed to protecting the privacy of the personally identifiable

> information that we collect from you," when, in fact, Defendants never implemented the security safeguards needed.

180. The above unlawful and deceptive acts and practices by Defendants was immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid. This substantial injury outweighed any benefits to consumers or to competition.

181. Under the New Jersey Consumer Fraud Act, the following qualifies as an unlawful practice:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.

N.J.S.A. § 56:8-2.

182. In enacting the Identity Theft Prevention Act ("ITPA"), N.J.S.A. 56:8-161 to -166.3, which among other things, amended the New Jersey Consumer Fraud Act, the New Jersey Legislature found that "[i]dentity theft is an act that violates the privacy of our citizens and ruins their good names: victims can suffer restricted access to credit and diminished employment opportunities, and may spend years repairing damage to credit histories." N.J.S.A. § 56:11-45.

183. At all relevant times, Defendants conducted business in New Jersey and collected Private Information from New Jersey residents within the meaning of the ITPA.

184. Defendants violated the ITPA by failing to disclose the Data Breach in the most expedient time possible and without unreasonable delay to: (i) customers, (ii) The New Jersey State Police, and (iii) Consumer Reporting Agencies, in violation of N.J.S.A. 56:8-163(a), N.J.S.A. 56:8-163(c)1, and N.J.S.A. 56:8-163(f).

185. Defendants knew or should have known that their data security practices were inadequate to safeguard Plaintiff's and Class Members' Personal Information and that the risk of a data breach was highly likely. Defendants' actions in engaging in the above-listed unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members.

186. Plaintiff and Class Members reasonably expected that Defendants would protect their Private Information and reasonably expected that Defendants would provide truthful statements on their website and privacy policies, and that it would be safe to provide Defendants with their information. These representations and affirmations of fact made by Defendants, and the facts they concealed or failed to disclose, are material facts that were likely to deceive reasonable consumers, and that reasonable consumers would, and did, rely upon in deciding whether or not to

entrust their information to Defendants. Defendants, moreover, intended for patients and employees, including Plaintiff and Class Members, to rely on these material facts. Defendants conduct also violated the statutes and/or regulations including but not limited to the ITPA, constituting violation of the NJCFA.

187. As a direct and proximate result of Defendants' unconscionable and deceptive acts and practices, Plaintiff and Class Members suffered an ascertainable loss in moneys or property, real or personal, as described above, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information.

188. Plaintiff and Class Members seek relief under N.J.S.A. § 56:8-19, including but not limited to, injunctive relief, other equitable relief, actual damages, treble damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and each member of the proposed Class, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

A. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Class under Federal Rule of Civil Procedure 23, including the appointment of Plaintiff as Class Representative and the appointment of Plaintiff's counsel as Class Counsel;

B. For an award of actual, nominal, compensatory, and consequential damages to Plaintiff and Class Members, as allowed by law, in an amount to be determined at trial;

C. That the Court enjoin Defendant, ordering it to cease the unlawful activities described herein;

D. For equitable and injunctive relief enjoining Defendant from engaging in the wrongful conduct alleged herein, and requiring Defendant to implement and maintain adequate data security safeguards, including but not limited to an Order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to encrypt all PII in its possession in accordance with applicable regulations, industry standards, and applicable law;

iii. requiring Defendant to engage independent third-party security auditors to conduct regular security assessments, penetration tests, and audits of its systems;

iv. requiring Defendant to implement network segmentation and access controls so that a compromise of one area of its network cannot spread to other areas;

v. requiring Defendant to implement and maintain a comprehensive threat monitoring program and incident response plan;

vi. requiring Defendant to establish an annual information security training program for all employees with access to PII; and

vii. requiring Defendant to meaningfully educate all Class Members about the threats they face as a result of the Data Breach and the steps available to protect themselves;

E. For an award of restitution and disgorgement of profits, benefits, and compensation obtained by Defendant through its wrongful conduct;

F. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

G. For an award of attorneys' fees, litigation costs, and expenses, as permitted by law; and

H. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury on all issues so triable.

Dated: April 22, 2026

**FURIA LAW, LLC**

*s/Philip J. Furia*
By : Philip J. Furia (NJ Bar No.: 013152009)
350 Springfield Avenue, Suite 200
Summit, New Jersey 07901
Tel: (845) 483-7100
Email: furiap@furiafirm.com

*Attorneys for Plaintiff and the Class*